UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

Relator TOM COLUCCI

    Relator,

BRINGING THIS ACTION ON BEHALF
OF THE UNITED STATES OF AMERICA

   – against –

BETH ISRAEL MEDICAL CENTER,
ERNST & YOUNG, LLC, MORT HYMAN,
TOM HAYES, and ROBERT NALDI

    Defendants.

-------------------------------------------------------X

Civil Action No. 06-CIV-5033

(DC) (HBP)

## MEMORANDUM IN SUPPORT OF MOTION TO SUBSTITUTE
## CLEUZA COLUCCI AS PARTY RELATOR

The McFadin Law Group
11 Broadway, Suite 715
New York, NY 10004
*Attorneys for Relator*

## PRELIMINARY STATEMENT

Mrs. Cleuza Colucci, the administrator of the late Mr. Colucci's Estate, by and through her attorneys The McFadin Law Group, hereby moves to be substituted as relator in the above captioned action.

## PROCEDURAL HISTORY

This action was first commenced by Thomas Colucci as relator on behalf of the United States by filing his complaint under seal on June 29, 2006 (*see* ECF System, Docket No. 1). The complaint was unsealed on September 13, 2007 (*see* ECF System, Docket No. 5) and was then served upon Beth Israel Medical Center ("BIMC") on January 10, 2008 (*see* ECF System, Docket No. 7), and upon the individual defendants by waiver of service on January 25, 2008 (*see* Waiver of Service attached hereto as Exhibit "A"[1]). In his complaint, Mr. Colucci alleged Medicare fraud stemming from costs related to BIMC's direct medical education expenses and indirect medical education expenses.

Before the defendants answered the complaint, Mr. Colucci passed away. As a result, on February 21, 2008 this action was stayed until such time as "an executor or administrator has been appointed for Mr. Colucci's estate", at which time such executor or administrator was to "advise the court as to whether he seeks to continue to prosecute this case" (*see* Order of the Court, dated February 21, 2008, attached hereto as Exhibit "B"). Relator's counsel was directed to file a status report within 60 days. *Id.* Within 60 days on April 18, 2008, relator's counsel provided the Court with a copy of the late Mr. Colucci's death certificate and informed the Court that Mrs. Cleuza Colucci, Mr. Colucci's widow, was seeking to be appointed as administrator of the Colucci Estate but would probably not be appointed as such until the end of May 2008 (*see*

---

[1] All Exhibits referred to herein are annexed to the Declaration of Diane McFadin, Esq.

April 18, 2008 Letter, attached hereto as Exh. "C").  By order dated April 29, 2008, relator's

counsel was directed to provide a second status report no later than June 20, 2008 advising the

Court whether Mrs. Colucci did in fact intend to seek substitution of pursuant to Fed. R. Civ. P.

25(a) (*see* ECF System, Document No. 14).  Mrs. Colucci thereafter was appointed as

administrator of the Colucci Estate and now seeks to be substituted as relator in this action.

**ARGUMENT**

Pursuant to Rule 25(a)(1), "If a party dies and the claim is not extinguished, the court

may order substitution of the proper party.  A motion for substitution may be made by any party

or by the decedent's successor or representative…" Fed. R. Civ. P. 25(a)(1).  Thus, for this

Court to grant the administrator of Mr. Colucci's Estate substitution, the claim asserted must not

abate upon the relator's death, the Court, in its discretion, may grant the motion for substitution,

and there must be a proper party substituted.

**POINT I**

**A *QUI TAM* ACTION DOES NOT ABATE UPON THE RELATOR'S DEATH**

In the case at bar, Mr. Colucci brought a *qui tam* action as a relator.  It appears that the

Second Circuit has not yet ruled on the issue of whether *qui tam* claims abate upon the relator's

death.  Therefore, this Court should look to the rules of its sister courts for guidance on the issue.

It is beyond dispute that whether a relator's *qui tam* action survives his death is a question

of federal law.  *Schreiber v. Sharpless*, 110 U.S. 76, 80 (1884); *U.S. ex rel. Neher v. NEC Corp.*,

11 F.3d 136, 137 (11th Cir. 1994); *see also, Smith v. Dep't of Human Serv.*, 876 F.2d 832, 834

(10th Cir. 1989); *Murphy v. Household Fin. Corp.*, 560 F.2d 206, 208 (6th Cir. 1977).  Applying

federal law, all courts which have considered this issue have also agreed that actions which are

remedial, rather than penal, survive past the claimants death.  *Schreiber v. Sharpless*, 110 U.S.

3

76, 80 (1884); *U.S. ex rel. Neher v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1994); *Smith v. Dep't of Human Serv.*, 876 F.2d 832, 834-836 (10th Cir. 1989).

From the U.S. Supreme Court's decision in *Huntington v. Attrill*, the Sixth Circuit formulated a 3-prong test (the "*Murphy* Test") to determine whether an act is penal or remedial. *See, generally, Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224 (1892), *Murphy v. Household Finance Corp.*, 560 F.2d 206, 208 (6th Cir. 1977). While the test itself is analyzed in Subpart A, below, for reasons stated in Subpart B, this Court should bypass the *Murphy* analysis because the Supreme Court has already made a dispositive statement on this issue.

**A. According to the *Murphy* Test, the False Claims Act is Remedial**

In *Murphy*, the Sixth Circuit held that the Truth in Lending Act was remedial in nature by considering the following three factors:

> 1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; 2) whether recovery under the statute runs to the harmed individual or to the public; and 3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered.

*Murphy v. Household Finance Corp.*, 560 F.2d 206, 208 (6th Cir. 1977), *citing, Huntington v. Attrill*, 146 U.S. 657, 666-69, 13 S.Ct. 224 (1892), *Bowles v. Farmers National Bank of Lebanon, Ky.*, 147 F.2d 425, 428 (6th Cir. 1945), *Porter v. Household Finance Corporation*, 385 F.Supp. 336, 340-42 (S.D.Ohio 1974). This *Murphy* Test has been cited with approval by the Tenth Circuit and has been applied by the Eleventh Circuit and a district court from the Tenth Circuit to judge the False Claims Act framework. *Cf., U.S. ex rel. Neher v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1994) (finding the FCA is remedial after applying the *Murphy* Test); *Smith v. Dep't of Human Serv.*, 876 F.2d 832, 834 (10th Cir.1989) (citing the *Murphy* Test with approval); *U.S. ex rel. Semtner v. Medical Consultants, Inc.*, 170 F.R.D. 490 (W.D. Ok. 1997) (holding the FCA is remedial after applying the *Murphy* Test but for reasons outside the *Murphy* Test

framework). "A remedial action is one that compensates an individual for specific harm suffered, while a penal action imposes damages upon the defendant for a general wrong to the public." *U.S. ex rel. Neher v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1994), *citing, In re Wood*, 643 F.2d 188, 190-91 (5th Cir. 1980). This is because "the word 'penal' in its true sense denotes 'a criminal or quasi-criminal law' ". *Smith v. Dep't of Human Serv.*, 876 F.2d 832, 836 (10th Cir.1989), *citing, Huntington v. Attrill*, 146 U.S. 657, 676, 13 S.Ct. at 231 (1892).

As to the first prong of the *Murphy* Test, the Eleventh Circuit held that the purpose of the FCA was to the redress individual wrongs because "The government's recovery against a FCA defendant is intended to compensate the government for damages suffered as a result of the defendant's actions." *U.S. ex rel. Neher v. NEC Corp.*, 11 F.3d 136, 137-138 (11th Cir. 1994), *citing U.S. ex rel. Marcus v. Hess*, 317 U.S. 537, 551-52, 63 S.Ct. 379, 388 (1943). As to the second prong of the *Murphy* Test, the Eleventh Circuit reasoned that the recovery under the FCA ran to the United States Government, as an individual of the *qui tam* "as compensation for damages" sustained because of the defendant's fraud and to the relator as an individual of the *qui tam* as a reward, as compensation for injuries suffered as a result of his employment, and as compensation for the substantial time and effort spent in prosecuting the action. *NEC Corp.*, 11 F.3d at 138. Because the FCA remedies wrongs against individuals, it should be characterized as remedial in nature

Finally, as the third prong of the *Murphy* Test, the Sixth Circuit noted that both the anti-trust and patent laws each allow for treble damages and have been held not to be penalties. *Murphy*, 560 F.2d at 210, n. 5, *citing Porter*, 385 F.Supp. at 341 (noting that antitrust treble damages, patent treble damages, tax 50% civil fraud penalty damages and securities fraud actions have been held not to be penal (internal citations omitted)). Moreover, the Eleventh

Circuit specifically held that a recovery under the FCA is not disproportionate because the damages in a *qui tam* can be quite substantial and the FCA was enacted to remedy this harm. *NEC Corp.*, 11 F.3d at 138. Therefore, by applying the *Murphy* Test, this Court should hold that the FCA is not a penalty and thus survives the life of a *qui tam* relator upon his or her death.

## B. The Supreme Court Has Stated that Qui Tams are Remedial

While this Court would likely hold that the FCA is remedial after applying the *Murphy* Test, this Court should refrain from applying the *Murphy* Test in the first instance because the Supreme Court has "already made a dispositive statement on the penal or remedial question." *Smith*, 876 F.2d at 835-837; *U.S. ex rel. Semtner v. Medical Consultants, Inc.*, 170 F.R.D. 490 (W.D. Ok. 1997).

The Supreme Court previously noted in dicta that because FCA actions provide for treble damages, they are essentially "punitive in nature." *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 784 (2000) (holding that a state could not be held liable under the FCA). However, in a subsequent decision, the Supreme Court specifically retreated from *Stevens'* blanket implication that treble damages rendered *qui tam* actions entirely penal in nature by stating that "the most obvious indication that the treble damages ceiling has a remedial place under [the FCA] is its *qui tam* feature with its possibility of diverting as much as 30 percent of the Government's recovery to a private relator who began the action." *Cook County, Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119 (2003). The Supreme Court's decision would be in line with other jurisdictions that have held that antitrust treble damages, patent law treble damages, tax law 50% civil fraud penalty damages and securities fraud actions have been held not to be penal. *See*, Subpart A, *supra*.

Since *Chandler*, the only court to consider whether a relator's *qui tam* action abates on

death chose not to apply the *Murphy* analysis and followed the Supreme Court's new *Chandler* reasoning, holding that the a *qui tam* does not extinguish upon the relator's death. *U.S. ex rel. Botnick v. Cathedral Health Care Systems, Inc.*, 352 F.Supp.2d 530, 532 (D.N.J. 2005) ("As the Supreme Court specifically cited the provision for a relator's recovery of a percentage of any FCA award as an indication of the remedial aspects of the statute, this Court agrees with Botnick's estate that it would follow that a relator's recovery constitutes a remedial action rather than a penal one"). Taken together with *Botnick*, it appears to this relator's counsel that the jurisdictions holding that a relator's *qui tam* action does not abate upon death[2] outnumber the jurisdictions that hold that such a claim does abate upon the relator's death[3]. In fact, the only decision relied upon by defendants in their February 7, 2008 letter to the Court[4] for the contention that a *qui tam* relator's claim does abate upon his death was a 2002 Oregon district court case decided after *Stevens* but before *Chandler* which specifically chose to apply *Stevens*' dicta reasoning. *U.S. ex rel Harrington v. Sisters of Providence in Or.*, 209 F.Supp.2d 1085, 1089 (D.Or. 2002). Ignoring for the moment the fact that the *Stevens* holding has questionable applicability to the case at bar where no state is being sued, it appears that the reasoning relied upon by *Harrington* and defendants has essentially be overruled by the Supreme Court in its subsequent *Chandler* decision.

If this Court does not conduct the *Murphy* Test and instead follows the Supreme Court's most recent reasoning regarding the remedial nature of the FCA, then this Court should hold that

---

[2] *U.S. ex rel. Neher v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1994); *U.S. ex rel. Semtner v. Medical Consultants, Inc.*, 170 F.R.D. 490 (W.D. Ok. 1997); *U.S. ex rel. Botnick v. Cathedral Health Care Systems, Inc.*, 352 F.Supp.2d 530, 532 (D.N.J. 2005); *Klaczak v. Consolidated Medical Transport, Inc.*, No. 96-C-6502, 2002 WL 31010850, *7-8 (Sept. 9, 2002) (holding FCA does not abate upon the death of a defendant as against that defendant).

[3] *U.S. ex rel Harrington v. Sisters of Providence in Or.*, 209 F.Supp.2d 1085, 1089 (D.Or. 2002) (holding relator's FCA claim did not survive his death by relying on *Stevens*, a Supreme Court case whose dicta reasoning was specifically limited in its subsequent *Chandler* decision).

[4] Attached as Exhibit "F" hereto.

the FCA does not extinguish upon the death of the qui tam relator.

## POINT II

## THIS COURT, IN ITS DISCRETION, SHOULD GRANT PARTY SUBSTITUTION

Even if this Court holds that a FCA claim does not extinguish upon the death of the relator, the Court still maintains discretion in choosing to allow substitution to occur. Fed. R. Civ. P. 25(a)(1) ("If a party dies and the claim is not extinguished, the court may order substitution of the proper party"). In *Saylor v. Bastedo*, the Second Circuit provided guidance as to how to apply this discretion to a motion to substitute. *Saylor v. Bastedo*, 623 F.2d 230, 236 (2nd Cir. 1980).[5] The *Saylor* Court held that though a motion to substitute will ordinarily be granted, "it may be denied by the court in the exercise of a sound discretion if made long after the death as can occur if the suggestion of death is not made or is delayed and circumstances have arisen rendering it unfair to allow substitution." *Saylor v. Bastedo*, 623 F.2d 230, 236, *citing, Anderson v. Yungkau*, 329 U.S. 482, 485, 486, (1947). The *Saylor* Court went on to note that it could point to only one reported case "in which a timely motion to substitute has been denied on the ground that the court, in its discretion, has determined that substitution would be unfair." *Saylor*, 623 F.2d at 237.

---

[5] In *Saylor*, the Second Circuit considered a former version of Rule 25(a) that was substantially similar to the version now in effect:

> [Rule 25](a) Death. (1) If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

*Saylor*, 623 F.2d at 236, n. 8.

Relator's counsel informed the Court of Mr. Colucci's death within a week of actually learning of the fact themselves. Mr. Colucci was pronounced dead on January 25, 2008 (*see* Colucci Death Certificate, Exh. "D" hereto), and relator's counsel informed the Court and opposing counsel by letter in accordance with Rule 5 (*see* February 1, 2008 Letter, Exh. "E" hereto). In these circumstances, there has been no delay in announcing Mr. Colucci's death sufficient to justify the Court's exercise of discretion to deny substitution. Moreover, there are no other circumstances that have arisen which would render substitution unfair. Therefore, the Court, in its discretion, should grant substitution in this action.

**POINT III**

**CLEUZA COLUCCI IS A PROPER PARTY FOR SUBSTITUTION**

Pursuant to Rule 25(a)(1), only a "proper party" may be substituted if a party dies and the claim is not extinguished. Fed. R. Civ. P. 25(a)(1). A legal representative of the deceased is a "proper party." *Roe v. City of New York*, No. 00-Civ.-9062, 2003 WL 22715832, at *2 (S.D.N.Y. Nov. 19, 2003); *U.S. v. Arena Slip Copy*, No. 02-CV-5216, 2007 WL 2907492, at *2 (E.D.N.Y. Aug. 24, 2007); *Billups v. West*, No. 95-CV-1146, 1998 WL 341939 (S.D.N.Y. June 26, 1998); *Farren v. Shaw Environmental, Inc.*, No. 06-CV-427S, 2008 WL 363860, at *1 (W.D.N.Y. Feb. 11, 2008); *see, Sinito v. United States Dep't of Justice*, 176 F.3d 512, 516 (D.C. Cir. 1999). Because Ms. Cleuza Colucci has been appointed as administrator in this action (*see* Exh. "G" hereo), she is a representative of the deceased and therefore, a "proper party."

**CONCLUSION**

For the foregoing reasons, the administrator for Mr. Colucci's Estate respectfully requests that this Court grant her motion to be substituted as relator in this action.

9

Dated: New York, New York
      July 17, 2008

                Respectfully Submitted,

                **THE McFADIN LAW GROUP**
                *Attorneys for Relator*

                /s/ Diane McFadin

By:        _____
                Diane McFadin (DM2381)
                11 Broadway, Suite 715
                New York, NY 10004
                646.723.2757

To:    Dietrich L. Snell, Esq.
       James F. Segroves, Esq.
       Malcolm J. Harkins, III, Esq.
       Proskauer Rose LLP
       1585 Broadway
       New York, NY 10036